IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSAN M. FLEMING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-254-RAW-SPS |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Susan M. Fleming requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was sixty-five years old at the time of the administrative hearing (Tr. 34). She completed high school and has previously worked as an executive administrative assistant (Tr. 21, 189). The claimant alleges she has been unable to work since August 21, 2015, due to a cervical fusion, left shoulder bone spur, right elbow ulnar nerve compression, and cumulative trauma on the right shoulder (Tr. 188).

## Procedural History

On October 30, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 14, 2020 (Tr. 13-22). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she can lift/carry ten pounds

frequently and occasionally, stand/walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Additionally, he found she must avoid work above the shoulder level (Tr. 16). He then found that she was capable of performing her past relevant work as an executive administrative assistant, as generally performed (Tr. 21).

## Review

The claimant's sole contention of error is that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Sheba Joseph, M.D. The Court agrees that the ALJ failed to properly assess Dr. Joseph's assessment, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease status post cervical surgery, left shoulder surgery, and bilateral elbow surgeries, as well as the nonsevere impairment of hypertension (Tr. 15-16). The relevant record reflects that over the years the claimant had several work-related injuries with regard to her cervical spine, right shoulder, and right arm/elbow (Tr. 280-281).

Dr. Kenneth Trinidad evaluated the claimant for her work-related injuries on more than one occasion. On June 2, 2016, he stated that the claimant's condition was chronic and stable, and that maximum recovery had been achieved (Tr. 295). On October 31, 2016, with regard to her work-related injuries, he found she had sustained cumulative trauma to her right shoulder, right elbow, and neck, and that the combination of these injuries rendered her 100% permanently and totally disabled (Tr. 289-292).

Upon evaluation in February 2017, Dr. Stephen Wilson, M.D., found that the claimant had mild loss of motion, pain, and weakness in her bilateral shoulders, aggravated by lifting her arms overhead or away from the body movements, and further noted her work-related injuries to her cervical spine, right shoulder, and right arm/elbow (Tr. 283). He found that she was not totally and permanently disabled, but that she did have a degree of disability greater than the addition of her work-related injuries (Tr. 283).

Treatment notes at various times reflect normal musculature and no joint deformity or abnormalities, but range of motion restrictions of the elbow (Tr. 367). On September 12, 2017, the claimant underwent a left elbow lateral release with epicondylectomy and repair of common extensor tendon. On follow up, she continued to complain of right elbow pain and requested an injection, which was done (Tr. 341-342, 345). The pain relief lasted approximately three to four months, but in April 2018 she again complained of severe pain (Tr. 422).

A November 2017 x-ray of the cervical spine showed mild retrolisthesis of C4 on C5, potentially spondylolytic in nature; ACDF at C5/6 with anterior hardware that appeared mature; facet hypertrophic changes most notably at C7/T1, with mild facet hypertrophic changes throughout the remainder of the cervical spine; and moderate degenerative disc disease C4/5 with anterior and posterior osteophytic spurring (Tr. 363). An October 2018 MRI of the cervical spine revealed status post interbody fusion at C5-6 and mild central canal narrowing and bilateral foraminal narrowing at C4/5 (Tr. 479). An MRI of the lumbar spine was essentially normal (Tr. 480). An MRI of the thoracic spine revealed minor intervertebral disc space narrowing and kyphotic changes to the dorsal spine, as well

as degenerative lumbar disc osteophyte L1-L2 (Tr. 482). Upon review of the MRIs, the claimant was referred for outpatient home therapy, but surgery was recommended if that did not work (Tr. 483). She underwent surgery in December 2018, which improved her upper extremity pain and neck pain (Tr. 570). However, by February 2019, the claimant's mild stenosis at L2-1 caused her right-sided pain and she was given an epidural steroid injection (Tr. 716). She underwent an ablation in November 2018 (Tr. 755). In March 2019, the claimant also underwent a right elbow lateral release and epicondylectomy (Tr. 650). She did well but still lacked full extension in her elbow (Tr. 700).

On August 3, 2018, Dr. William R. Grubb examined the claimant and assessed her with bilateral elbow pain with previous surgeries, bilateral shoulder pain with surgery with previous shoulder derangement, disc disease of the cervical spine with previous fusion and diminished range of motion, neck pain probably related to the above, and degenerative joint and possibly disc disease of the lumbosacral spine with low back pain (Tr. 440). She had range of motion and pain limitations of the lumbosacral spine, and her right straight leg raise test (sitting) was positive (Tr. 442-444).

On November 29, 2018, the claimant's treating physician, Dr. Sheba Joseph, M.D. completed a medical source statement (MSS) as to the claimant's physical impairments (Tr. 693-698). She indicated that the claimant could lift/carry up to ten pounds occasionally due to her intercostal neuropathy, segmental and somatic dysfunction of the rib cage, status post interbody fusion C5-6, and central canal narrowing and bilateral foraminal narrowing C4-5 (Tr. 693). Additionally, she indicated that the claimant could sit for fifteen minutes at a time, up to three hours in an eight-hour workday and stand/walk

ten minutes at a time each, up to two hours in an eight-hour workday, indicating that the claimant would need to lay down about an hour as well (Tr. 694). In support, she cited the claimant's multilevel degenerative disc disease of upper thoracic spine, spondylosis with radiculopathy of the thoracic lumbar region, and L1-L2 neuroforaminal stenosis (Tr. 694). Dr. Joseph indicated that the claimant could only reach occasionally and push/pull frequently, but that she could continuously handle, finger, and feel with the right hand due to central canal narrowing at C4-5 and tennis elbow on the right (Tr. 695). She further indicated that the claimant could only occasionally climb ladders/scaffolds and stoop, frequently balance, and continuously climb stairs/ramps, kneel, crouch, and crawl (Tr. 696). She cited the claimant's L1-2 neuroforaminal stenosis and degenerative disc disease of thoracic spine (Tr. 696). She also stated that the claimant could not sit for more than fifteen minutes at a time, and that she could not use a computer/mouse for more than fifteen to thirty minutes at a time (Tr. 698). Treatment notes during this time reflect all of these impairments, but indicate the claimant had a normal musculature (Tr. 729). This is consistent with treatment notes from Advanced Pain of Tulsa, where the claimant was also noted as having no gross sensory or motor deficits, but nevertheless having decreased range of motion, muscle spasm, pain upper and lower, and vertebral tenderness (Tr. 747).

 State reviewing physicians determined initially and upon review that the claimant could perform the full range of light work, except that she could stand/walk up to four hours in an eight-hour workday (rather than the typical six) (Tr. 59-60, 76-78).

 In his written opinion at step four, the ALJ summarized the claimant's testimony as well as a great deal of the medical evidence in the record (Tr. 16-21). As to Dr. Joseph's

assessment, he found that the limitations in Dr. Joseph's RFC assessment were contradicted by her treating notes because she had told the claimant she would not have leg limitations then later limited her, and because one treatment noted from November 2018 reflected normal musculature and normal neurological examination. Additionally, the ALJ noted an August 2019 treatment note indicating that the claimant had no gross sensory or motor deficits, reflexes were normal, strength was 4 out of 5, and she could ambulate without difficulty (Tr. 20-21). As to the state reviewing physicians, he found their opinions partially persuasive, but further stated that he limited the claimant to a sedentary residual functional capacity, although he actually determined the claimant could perform less than the full range of light work (Tr. 16, 20). He then ultimately determined that the claimant was not disabled, finding she could return to her job as executive administrative assistant as generally performed (sedentary) (Tr. 22).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3) & 416.920c(b)(3).

The regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, and as part of that explanation, also require him to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In this case, the ALJ stated that the claimant's limitations were contradicted by her own treatment notes because Dr. Joseph told her in November 2018 that she would have no leg limitations despite later limiting her standing/walking, and that

she had normal musculature and normal neurological examinations, as well as no gross sensory or motor deficits (Tr. 21).  However, the ALJ takes these records out of context.  In the same records where the ALJ emphasized positive findings, they consistently noted the claimant's decreased range of motion, as well as diagnoses including documented back pain, thoracic degenerative disc disease, and cervical stenosis of the spine (Tr. 728-729).  Indeed, the same record the ALJ cited in support of the claimant's lack of sensory or motor deficits (and ability to ambulate) notes the claimant's decreased range of motion, muscle spasm, pain, and tenderness (Tr. 747).  These few instances "challenging" Dr. Joseph's assessment are insufficient in addressing the supportability and consistency of her opinion for persuasiveness.  It was error for the ALJ to "pick and choose" his way through the evidence in this record in order to avoid finding the claimant disabled.  *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").  *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citation omitted); *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (citation omitted).

Because the ALJ failed to properly evaluate *all* the claimant's impairments and the opinion evidence of record, the decision of the Commissioner is therefore reversed and the

case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**